# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| SHANNON WAGONER, *et al.*, | : | Consolidated Cases No. 1:08-cv-680 |
| | : | |
| Plaintiffs, | : | U.S. Magistrate Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | |
| DAKOTA'S ROADHOUSE, *et al.*, | : | **MEMORANDUM OF OPINION** |
| | : | **AND ORDER GRANTING SUMMARY** |
| Defendants. | : | **JUDGMENT TO DEFENDANTS** |
| | : | |

These consolidated cases are before the Court on Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docs. 74, 75, 76) and the parties' responsive memoranda (Docs. 78, 79, 80). All parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 23).

## I. BACKGROUND AND FACTS

Plaintiff Wagoner initiated this action by filing a complaint against Defendants Dakota's Roadhouse, Lori Harrington, and Ed Steele, for discrimination pursuant to 42 U.S.C. §2000e-5(f)(1). Pamela Campton and Debra Roy-Benson filed similar complaints for discrimination against the Defendants (*see Campton v. Dakota's Roadhouse, et al.*, Case No. 1:08-cv-690, and *Roy-Benson v. Dakota's Roadhouse, et al.*, Case No. 1:08-cv-691), and the cases were consolidated on October 15, 2009. (Doc. 29). The Defendants are a restaurant, which formerly employed the Plaintiffs, along with two individual managers of that restaurant.

The undisputed facts relating to each Plaintiff are detailed below.

A.  *Debra K. Roy-Benson*

Ms. Roy-Benson was hired as a server to work at Dakota's in Hillsboro, Ohio in September 2005. She was given a week-long training course before starting her work. (Doc. 74, Ex, 1, Harrington Affidavit ¶2).

Ms. Roy-Benson was given a formal warning on November 25, 2006 for an emotional outburst after reading a company posting of the State's new smoking policy. She removed and crumpled the memo, and was yelling and swearing about the policies. She was warned at that time that any future outbursts or violations of policy could result in disciplinary action. (*Id.* at ¶ 3).

On January 6, 2007, Ms. Roy-Benson had another emotional outburst during the daily shift meeting. She was asked to clock out and leave, which she refused to do. As a result of this second incident, as well as being rude to co-workers, and, on two occasions, to a guest, Ms. Roy-Benson was terminated on January 9, 2007.  (*Id*. at ¶¶ 4, 6).

Thereafter, Ms. Roy-Benson filed a complaint against Defendants pursuant to 42 U.S.C. §2000e-5 (Title VII of the Civil Rights Act of 1964). The EEOC letter attached to Ms. Roy-Benson's complaint was issued to another Plaintiff in this case, Pamela Campton. Ms. Roy-Benson testified she never received a right to sue letter from the EEOC issued in her name. (Doc. 68, Roy-Benson dep. p. 91).

According to her complaint, Ms. Roy-Benson was terminated due to

"discrimination." The complaint, however, does not identify the basis of her discrimination claim. Moreover, at her deposition, Ms. Benson testified that she was not discriminated against for being a member of a protected class. Notably, she testified:

> Q. Okay. No one at Dakota's told you you were being fired because you were a female?
>
> A. No.
>
> Q. And being female did not stop you from being hired at Dakota's. Is that right?
>
> A. No.
>
> Q. Okay. The complaint -- and if you want to look at this, it's -- I haven't quite gotten to it yet, but it's marked as Exhibit 6. I'll hand you that, in case you want to look at it, but it basically says, if I read it right, that you were told you were being fired because you see things differently from other people. Is that correct?
>
> A. Yes. I am too emotional, I need help, and I see things differently than other people. And then she even put it down on the termination papers.
>
> Q. Okay. Do you believe that Lori Harrington is the manager that let you go because she felt you see things differently than other people?
>
> A. Yes.

(*Id.* at pp. 57, 58).

Plaintiff further testified:

> Q. Okay. I asked you questions about being a female. I want to ask you a slightly different question now. Do you have any direct evidence that you were fired due to your race, color or national origin?
>
> A. Not direct or indirect.

(*Id.* at p. 61).

Plaintiff repeated this statement later in her deposition, testifying:

> Q. That, again, seems to state to me that Lori did not limit your employment because of race, color, sex or national origin, but rather she limited your employment otherwise because she wrote that you saw things differently. Is that correct?
>
> A. Yes.

(*Id.* at p. 83).

### B. *Shannon Wagoner*

Ms. Wagoner was hired as a server to work at Dakota's in Hillsboro, Ohio in February 2006. She was given a week-long training course before starting her work. (Doc. 75, Ex. 1, Harrington Affidavit ¶2). Ms. Wagoner was suspended on July 9, 2006 for taking tables that were not hers and for an emotional outburst after the tables were restored to the proper server. She was warned at that time that any future problems could result in suspension or termination. (*Id.* at ¶ 3).

On January 25, 2007, Ms. Wagoner had another work incident for which she was suspended. Investigation of a guest's complaint revealed that Ms. Wagoner had run one guest's credit card twice, the second time for ten dollars too little. Ms. Wagoner later ran another guest's credit card for $10.00 too much to pay herself back for the $10.00 missed on the first guest's bill. She was suspended and directed to meet with the General Manager. (*Id.* at ¶¶ 4 and 5). Ms. Wagoner failed to show up for her meeting with the General Manager as scheduled. Her absence was considered a voluntary resignation. (*Id.* at ¶ 6).

Plaintiff Wagoner then filed a complaint against Defendants pursuant to 42 U.S.C. §2000e-5 (Title VII of the Civil Rights Act of 1964). The EEOC letter attached to Ms.

Wagoner's complaint was not issued in her name, but rather was issued to another Plaintiff in this matter, Pamela Campton. Ms. Wagoner's complaint fails to specify what type of discrimination she alleges against the Defendants. Her complaint repeatedly states that she did not suffer any discrimination as a result of being a member of a protected class.

Additionally, in her Memorandum in Opposition to Defendants' Motion to Dismiss, Ms. Wagoner states:

> *Fact 8 Shannon Wagoner Female (White) was terminated from her employment from Dakotas Roadhouse LLC on 02/07 not due to discrimination based on her race, color, sex, religion, national origin, or etc, rather Shannon Wagoner a Female White American was discriminated against in another way, other than supposed different, under other circumstances in any indirect employment matter based on a verbal commented statement by Lori Harrington General Management of Dakotas Roadhouse LLC. that Shannon Wagoner was alleged of stealing funds, etc.

(*See* Doc. 9, p. 5).

Moreover, when asked about the language in her opposition memorandum, Plaintiff Wagoner testified as follows:

> Q. Okay. Let's go over to the next page, which is page 5. And down toward the bottom, is Fact 8, do you see that?
>
> A. Yes.
>
> Q. And that appears to state, "Shannon Waggoner a Female, (White) was terminated from Dakotas Roadhouse LLC on 02/07, not due to discrimination based on her race, color, sex, religion, national origin, or etc., rather Shannon Waggoner a Female White American was discriminated against in another way, other than supposed different, under other circumstances, in any direct employment matter based on a verbal comment stated by Lori Harrington General Manager of Dakotas

>    Roadhouse LLC. that Shannon Waggoner was alleged of stealing funds, etc." Does that appear to be what this says?
>
> A. Yes.

(Doc. 69, pp. 54, 55).

Ms. Wagoner further testified, however, that being "female could be one" reason her employment ended. When asked to produce any direct evidence or proof of that at her deposition, she stated she did not have any such evidence.

> Q. It was after that meeting was scheduled that you were terminated, that your employment ended?
>
> A. I found out through other employees that I was terminated.
>
> Q. Let me ask you, do you have any direct evidence that you were - - that your employment ended because you were female?
>
> A. Yeah.
>
> Q. Okay.
>
> A. I would say so.
>
> Q. What would that be?
>
> A. The number of people filing unemployment, female could be one. The number of people fired and suspended from Dakotas would be, you know, there's several ways that we can prove it. I just don't have all those right here.

(*Id.* at p. 37).

   C.   *Pamela Campton*

Ms. Campton was hired as a server to work at Dakota's in Hillsboro, Ohio in June 2006. She was given a training class before starting to work as a server. (Doc. 76, Ex. 1,

-6-

Harrington Affidavit, ¶2). Ms. Campton began having work performance problems almost immediately upon starting her work at Dakota's. She was written up for work performance problems on June 24, 2006. (*Id.* at ¶3). Due to continuing work performance problems, Ms. Campton was given a second training class in August 2006. (*Id.* at ¶4).

In November 2006, Ms. Campton was again written up due to work performance problems. On November 19, 2006, Ms. Campton's employment was terminated due to ongoing work performance problems. (*Id*. at ¶¶5 and 6). Ms. Campton then filed a complaint against Defendants pursuant to 42 U.S.C. §2000e-5 for discrimination. She repeatedly states in her complaint that she did not suffer any discrimination as a result of being a member of a protected class. At page 4 of 5 of the complaint, Ms. Campton states:

> Here is my example Pamela Campton a Female White American was terminated from Dakotas Roadhouse, LLC on November 19, 2006 not due to discrimination based on my race, color, sex, religion and national origin, rather I was otherwise discriminated as a means in another way, other than supposed different, and under other employment circumstances, a direct employment matter. Where Lori Harrington General Manager of Dakota's Roadhouse LLC. Had verbally commented to me in regards to my poor work performance.

(*See* 1:08-cv-690, Doc. 4).

Furthermore, at her deposition, Ms. Campton testified:

Q. Okay. And this was not based on your race, color, sex or national origin. This was based on the fact that Lori Harrington did not like you.

A. Correct.

>Q. Okay. And according to this it was because she commented on your poor work performance?
>
>A. Correct.

(Doc. 70, pp. 57, 58).

Plaintiff later repeated and affirmed this testimony stating:

>Q. Okay. And again it appears to state that this - - that Dakota's did not limit or deprive you of employment due to your race, color, sex or national origin, is that correct?
>
>A. Correct.
>
>Q. Okay. And that you were otherwise deprived of employment based on Lori Harrington commenting that your alleged poor job skills were not acceptable and you were terminated, is that correct?
>
>A. Correct.

(*Id.* at pp 60, 61).

Upon these material facts, entry of summary judgment is required as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex,* 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

Defendants assert that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law with respect to the claims of Ms. Roy-Benson, Ms. Wagoner, and Ms. Campton. The Court agrees.

>   A. *Defendants are entitled to judgment as a matter of law with respect to the claims raised Ms. Roy-Benson and Ms. Wagoner.*

Defendants maintain that Ms. Roy-Benson's and Ms. Wagoner's claims are barred because neither of them received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").

Title VII requires a plaintiff alleging employment discrimination to file a timely charge of discrimination with the EEOC before bringing suit in federal court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798. When a charge of discrimination is filed, the EEOC must investigate the complaint in order to determine whether there is "reasonable cause to believe that the charge is true." 42 U.S.C. §2000e-5. If the EEOC determines that the complaint has a reasonable basis, it will issue a right to sue letter to the plaintiff. 29 C.F.R. §1601.28(b). A person must possess a right to sue letter from the EEOC in order to file suit under Title VII. *Frank's Nursery and Crafts, Inc*., 177 F.3d 448 456 (6th Cir. 1999).

Here, Ms. Roy-Benson and Ms. Wagoner attached a right to sue letter received by Plaintiff Pamela Campton. Neither Ms. Roy-Benson nor Ms. Wagoner were named in the letter, and Ms. Roy-Benson and Ms. Wagoner each testified that she did not receive a right to sue letter from the EEOC. Accordingly, Ms. Roy-Benson and Ms. Wagoner have failed to fulfill the prerequisites for filing their Title VII claim because each failed to timely exhaust her administrative remedies. *See Maynard v. Town of Monterey, Tennessee*, 75 Fed.Appx. 491, 493, 2003 WL 22171534, *1 (6th Cir. 2003); s*ee also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Notwithstanding Ms. Roy-Benson's and Ms. Wagoner's failure to exhaust their administrative remedies, they have also failed to establish *prima facie* case of actionable discrimination. Notably, their own sworn testimony establishes that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law.

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination on

the basis of race, color, sex or national origin. 42 U.S.C. §2000e-2(a)(1). Thus, a plaintiff cannot succeed on a claim of discrimination based on race, color, sex, or national origin without evidence establishing that the relevant adverse employment action was a result of unlawful discriminatory animus. *International Brotherhood of Teamsters v. US*, 431 US 324, 335 n.15 (1977). If an employer puts forth a legitimate, non-discriminatory reason for its decision, a plaintiff has the burden of proving that (1) the proffered reason has no basis in fact; (2) the proffered reason did not actually motivate the decision; or (3) the proffered reason was insufficient to motivate the decision. *Manzer v. Diamond Shamrock Chemical Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Here, Ms. Roy-Benson's and Ms. Wagoner's allegations in their memoranda *contra* to Defendants' motion to dismiss, as well as their own sworn testimony, establish that they were not discriminated against on the basis of their race, color, sex or national origin. As detailed above, Ms. Roy-Benson argues that she was not discriminated against based on her sex, color, age, or national origin, but that rather she believes she was terminated because her manager thought she was too emotional. Likewise, Ms. Wagoner maintains that she was not discriminated against based on her sex, color, age, or national origin, but that rather she believes she was terminated because her manager thought she committed a theft. Accordingly, neither Ms. Roy-Benson nor Ms. Wagoner can establish a *prima facie* case of Title VII discrimination.

Even assuming Ms. Roy-Benson or Ms. Wagoner could establish a *prima case* of discrimination, they have not produced any evidence upon which a rational fact finder

could conclude that Dakota's' articulated business reason for terminating their employment (*i.e*., Ms. Roy-Benson's emotional outbursts at work on multiple occasions and Ms. Wagoner's theft of restaurant funds) are false, and that discrimination was the real reason. *See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 141 (2000).

Accordingly, Defendants' motions for summary judgment with respect to Plaintiffs Roy-Benson and Wagoner are well-taken.

*D.     Pamela Campton*

As noted above, a plaintiff cannot succeed on a claim of discrimination based on race, color, sex, or national origin without evidence establishing that the relevant adverse employment action was a result of unlawful discriminatory animus. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

Here, Ms. Campton's complaint does not make any direct or indirect allegations of discrimination based on her membership in a protected class. Moreover, her own sworn testimony establishes that she was not discriminated against on the basis of her race, color, sex or national origin. Throughout her deposition, Ms. Campton testified that she was not discriminated against based on her sex, color, age, or national origin, but that rather she believes she was discriminated against because her manager commented on her poor work performance.

As a result, Ms. Campton has failed to evidence a *prima facie* case of Title VII discrimination, and Defendants are entitled to judgment as a matter of law with respect to her claims. *See Goller v. Ohio Dept. of Rehabilitation and Correction*, 2008 WL

2796080 (6th Cir. 2008).

Moreover, even assuming *arguendo* that Ms. Campton could establish a *prima case* of discrimination, she has not produced any evidence upon which a rational fact finder could conclude that Dakota's articulated business reason for terminating her employment (*i.e.,* poor work performance) is false, and that discrimination was the real reason. *See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 141 (2000).

**IV**.

Wherefore, based on the evidence of record, the Court finds that there are no genuine issues of material fact for trial, and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motions for summary judgment (Docs. 74, 75, 76) are **GRANTED;** all pending motions (Docs. 31, 33, 50, 52) are **DISMISSED as MOOT**; and this case is **CLOSED.**

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Date: April 26, 2010  s/Timothy S. Black
Timothy S. Black
United States Magistrate Judge